UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-02073-WYD

GRETCHEN K. WEGNER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security[1],

    Defendant.

_____

**ORDER**
_____

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for Disability Insurance Benefits under the Social Security Act, 42 U.S.C. §§ 401-433.  Plaintiff was born in March of 1959 and was 46 years old on the date of the ALJ's decision.  (Tr. 18-24).  Plaintiff alleges that she became disabled in May of 2003, due to chronic fatigue, tremors, disorientation, numbness in hands and feet, loss of motor skills, and depression.  (Tr. at 59.)  Plaintiff protectively filed her application on September 25, 2003.  (Tr. 18-24).  Plaintiff's application was initially denied.  (Tr. at 32-39).

After a hearing (Tr. 465-597), the Administrative Law Judge ("ALJ") determined on April 26, 2005, that Plaintiff was not disabled because her severe impairments have not prevented her from performing her past relevant work as bank teller, cashier, sales

---

[1]Michael J. Astrue, Commissioner of Social Security, has been substituted for former Commissioner Jo Anne B. Barnhart pursuant to FED. R. CIV. P. 25(d)(1).

clerk, or wait staff. (Tr. 19.) The Appeals Council declined review of the ALJ's determination (Tr. 7-9), making it the Commissioner's final decision for purposes of judicial review.

## II.     THE ALJ'S DECISION

The ALJ's decision follows the five-part sequential analysis required by law. At step one, the ALJ found that "there are no indications that [Plaintiff] has engaged in any substantial gainful activity since [May 14, 2003]." (Tr. at 19). At step two, the ALJ found that Plaintiff had the following severe impairments: "Chronic fatigue syndrome, depressive disorder, general anxiety disorder, and undifferentiated somatoform disorder." *Id.* The ALJ recognized that the chronic fatigue syndrome was "related to an undiagnosed Gulf War syndrome." *Id.* At step three, the ALJ found that Plaintiff "does not have impairments that meet the criteria of any of the listed impairments because the necessary clinical signs and diagnostic findings have not been established." *Id.* at 20.

The ALJ then decided the case against Plaintiff at step four. The ALJ examined the medical evidence and assessed Plaintiff's residual functional capacity ("RFC"). Tr. at 20. Plaintiff was found to have the RFC:

> to perform unskilled, medium exertional work with no climbing of ladders, ropes, or scaffolds; while avoiding concentrated exposure to extreme temperatures of cold and heat; and while avoiding all exposure to environmental hazards such as machinery and heights. Medium work involves lifting of no more than 50 pounds at a time, frequently lifting and carrying objects weighing up to 25 pounds, and may involve a good deal of standing and walking.

*Id.* at 21-22.

In making this assessment, the ALJ considered Plaintiff's credibility. Tr. at 21. The ALJ found that Plaintiff was inconsistent in her reporting of symptoms and response to treatment. *Id*. The ALJ also found that "there are indications in the medical evidence that [Plaintiff] engages in a substantial amount of symptom exaggeration." *Id*. As a result, the ALJ found that the record as a whole did not support Plaintiff's testimony as to the alleged frequency, intensity, or persistence of her symptoms and limitations. *Id*.

The ALJ went on to determine whether Plaintiff had the ability to perform her past relevant work. Tr. at 23. In making his determination, the ALJ considered the testimony of Mr. Duffin, a vocational expert ("VE") retained by the ALJ. *Id*. The ALJ found, based on the VEs' testimony, that Plaintiff was able to perform her past relevant work as a bank teller, cashier, sales clerk, or wait staff. *Id*. The ALJ further held that even if the treating physician's assessment were accepted, Plaintiff would be able to perform work as a private dispatcher, surveillance monitor, or telemarketer.

III.   ANALYSIS

    A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of

evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.* As explained above, the Commissioner has established a five-step sequence for evaluating disability. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (discussing five-step analysis); 20 C.F.R. § 404.1520(b)-(f). If it is determined that a claimant is or is not disabled at any point in the analysis, the review stops. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799 (10th Cir. 1991).

First, the claimant must meet the threshold test by demonstrating that [s]he is not currently involved in any substantial, gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits his/her physical or mental ability to do basic work activities. *Id.,* § 404.1520(c). Third, if the impairment matches or is equivalent to established Listings, the claimant is judged conclusively disabled. *Id.*, § 404.1520(d). If the claimant's impairments are not equivalent to the Listings, the analysis proceeds to the fourth step. At this stage, the claimant must show the "impairment prevents him/[her] from performing work he has performed in the past." *Williams v. Bowen*, 844 F.2d 748,

751 (10th Cir. 1988) (citations omitted). If the claimant is able to perform his/her previous work, [s]he is not disabled. If [s]he is not able to perform his previous work, the burden of proof shifts to the Commissioner to determine what work, if any, the claimant can do considering his/her residual functional capacity ("RFC"), age, education, and work experience. This burden is met if the decision is supported by substantial evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

  B. <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

My review of the record reveals a number of errors, including an error at step two, that require the Commissioner's decision be reversed and remanded.

    1. <u>Whether the ALJ Erred in Finding That Her Carpal Tunnel Syndrome was not a severe impairment</u>

Plaintiff argues that the ALJ erred in finding that her carpal tunnel syndrom, either individually or in combination, was not a severe impairment. (Pl. Br. at 16). I find that the ALJ erred in finding Plaintiff's carpal tunnel syndrome was not a severe impairment in combination with the other impairments and not considering the symptoms of Plaintiff's carpal tunnel syndrome in the subsequent stages of his analysis.

"The Supreme Court has adopted what is referred to as a *de minimus* standard with regard to the step two severity standard: 'only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking' the subsequent steps of the evaluation process." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004)(quoting *Bowen v. Yuckert*, 482 U.S.

137, 158 (1987)).  The ALJ must "consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Langley*, 373 F.3d at 1124 (internal quotations omitted).  "If the combined impairments are medically severe, the Commissioner must consider 'the combined impact of the impairments ... throughout the disability determination process." *Id.*

In the record, there is documentation that Plaintiff was diagnosed with carpal tunnel syndrome.  Specifically, Dr. Bruce H. Peters recognized that Plaintiff was previously diagnosed with carpal tunnel syndrome and stated that he "would have to agree with the diagnosis of carpal tunnel syndrome but it is very mild."  (Tr. at 135).  The ALJ decision states that Plaintiff's carpal tunnel syndrome "cannot be determined a severe impairment, as there is no objective medical evidence to establish that this condition causes more than minimal functional limitations."  (Tr. at 21).  This determination, however, applies the wrong legal standard.  Even if the record demonstrated that the carpal tunnel syndrome was mild, the ALJ should have considered the combined effects of Plaintiff's carpal tunnel syndrome with the other recognized impairments in the later stages of the ALJ's analysis.  Further, the ALJ did not identify any evidence in the record which would negate Dr. Peters' diagnosis of carpal tunnel syndrome.  Accordingly, I find that the ALJ's erred in not considering Plaintiff's carpal tunnel syndrome in the subsequent stages of the analysis.

### 2. Whether the ALJ Erred in the RFC Assessment and in Weighing the Physician's Findings

Plaintiff also argues that the ALJ erred in connection with his assessment of her Residual Functional Capacity ("RFC"). More specifically, Plaintiff argues that the ALJ: (1) improperly weighed the medical evidence and opinions of her treating physicians, (2) did not adequately develop the record, and (3) erred in assessing Plaintiff's credibilitty. The RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p.

"The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities." *Young v. Barnhart*, No. 04-7076, 2005 WL 2605301, at *3 (10th Cir. 2005). "The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence." *Id*. However, it is axiomatic that all of the ALJ's required findings [including the RFC] must be supported by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

#### a. The ALJ Improperly Weighed the Medical Evidence and Opinions

Plaintiff argues that the ALJ improperly weighed the medical evidence and opinions of her treating physicians. First, Plaintiff argues that the ALJ failed to consider the Veteran Administration's determination that Plaintiff was disabled. Second, Plaintiff argues that the ALJ improperly rejected Dr. Brassfield's assessment of Plaintiff's

chronic fatigue syndrome ("CFS") based on the ALJ's determination that the neurological testing did not return any positive results and that Plaintiff was not credible.  Third, Plaintiff argues that the ALJ improperly adopted the residual functional capacity assessment of the State Agency Disability Examiner.  I find, for the reasons stated below, that the ALJ did not properly weigh the medical evidence and the opinions of Plaintiff's treating physicians.

                1.        <u>The ALJ Erred in Not Considering the Veteran Administration's Determination that Plaintiff was Disabled</u>

On Febraury 26, 2004, the Veterans' Administration (VA) issued a letter to Ms. Wegner stating that she was eligible for a monthly entitlement based on their determination that she had Chronic Fatigue Syndrome, Major Depressive Disorder with Anxiety Disorder and Undifferentiated Somatoform Disorder, Irritable Bowel Syndrome, and Carpal Tunnel Syndrome.  Tr. at 87-89.  In combination, the VA determined that Plaintiff was eligible for 100% individual unemployability rate.  *Id.* at 89.

The ALJ identified that Plaintiff had been examined by the VA; however, the ALJ did not explain how much weight he gave the findings.  Therefore, it is unclear from the ALJ's decision whether or not the ALJ considered this rating in determining whether Plaintiff was eligible for benefits.  "Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered."  *Baca v. Dept. of Health and Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993).  "The [VA] rating may provide evidence that [the plaintiff] is disabled within the meaning of the Social Security Act."  *Id.*  Further, the VA examiner's determination that Plaintiff had a disability rating

of 100% is inconsistent with the ALJ's ultimate conclusion that Plaintiff could perform her past relevant work experience. The ALJ failed to explain this inconsistency. Accordingly, in the case at hand, it was error for the ALJ not to include a discussion of Plaintiff's VA disability rating and how it affected his decision.

### 2.     The ALJ Violated the Treating Physician Rule

Plaintiff argues that the ALJ failed to properly follow the treating physician rule. According to the 'treating physician rule', "the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)(citing 20 C.F.R. § 404.1527(d)(2)). First, an ALJ must determine whether the opinion qualifies for 'controlling weight.' *Id.* To make this determination, the ALJ must:

> first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. If the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.*

"In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physicians opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." *Langley*, 373 F.3d at 1121 (emphasis in the original).

Dr. Brassard was Plaintiff's treating physician and had "followed Ms. Wegner for many years." Tr. 189. Dr. Brassard diagnosed Plaintiff with "a chronic fatigue

syndrome undiagnosed Gulf War Syndrome." Tr. at 192.  On May 29, 2003, Dr. Brassard prepared a physical capacities evaluation.  *Id.* at 196-198.  In this physical capacities evaluation, Dr. Brassard determined: that Plaintiff could only sit, stand, or walk for four hours in an eight hour workday; that Plaintiff could only push, pull or lift five pounds; that Plaintiff could only use her hands occasionally and could not use her feet to operate foot controls.  *Id.* at 197.  On June 14, 2003, Plaintiff visited Dr. Brassard and he noted that she is "totally exhausted after about two or three hours and has to take a nap."  Tr. at 192.  Further, on November 13, 2003, Dr. Brassfield wrote a letter on behalf of Plaintiff Gretchen Wegner.  In the letter, Dr. Brassfield also described Plaintiff's symptoms and stated that "it is [Dr. Brassfield's] opinion that [Plaintiff] is permanently disabled from this condition, which for the lack of a better word, we could call chronic fatigue syndrome or Gulf War syndrome."  *Id.*

While the ALJ did recognize Plaintiff's CFS diagnosis, the ALJ discounted Dr. Brassard's physical capacities evaluation.  It appears that the ALJ decided Dr. Brassard's opinion was not deserving of controlling weight for two reasons.  First, the ALJ indicated that neurological testing did not support Dr. Brassard's assessment.  Second, the ALJ indicated that Dr. Brassard's assessment was based on Plaintiff's statements which were not credible.  Specifically, the ALJ stated in his decision that he:

> accord[ed] little weight to [Dr. Brassard's] assessment that the claimant would be limited to a less than sedentary exertional level, as the evidence clearly indicates that the physician relied primarily upon the claimant's numerous complaints of pain and fatigue in assessing her limitations.  *All of the neurological testing done on the claimant had returned negative results* ... However, considering the evidence of symptom exaggeration on the part of the claimant, and the finding that the claimant is not a credible witness, *an*

-10-

> *assessment based on her allegations carries little weight.*
> Tr. at 23 (emphasis added).

The ALJ's decision illustrates that the ALJ improperly rested his decision in part on a finding that there were no neurological tests to support Plaintiff's claim of CFS. As the court recognized in *Sisco v. U.S. Dept. Of Health*, 10 F.3d 739, 744 (10th Cir. 1993), there is no laboratory test for chronic fatigue syndrome. *see also* SSR 99-2P. Accordingly, it was error for the ALJ to discount Dr. Brassard's assessment of the severity of Plaintiff's CFS based on negative test results.

Further, it was error for the ALJ to reject Dr. Brassard's assessment based on the ALJ's credibility judgment regarding Plaintiff's testimony. The Tenth Circuit is clear that "'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'" *Langley*, 373 F.3d at 1121 (emphasis in original) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)).

>   3.   <u>The ALJ Erred in Finding that the Disability Examiner's Assessment is Consistent with the Record as a Whole</u>

Plaintiff next argues that the ALJ improperly accepted the assessment of the State Agency Disability Examiner. I agree, as the State Agency Disability Examiner's findings are not consistent with the record as a whole. The ALJ recognized that "[s]ince the medical examiner is not a physician or psychologist, the document is entitled to no weight as an expert medical opinion, nor does it constitute evidence from 'other non-

medical sources'." Tr. at 22. However, the ALJ went on to say that "the residual functional assessment prepared by the State Agency Disability Examiner is well supported by and consistent with the record as a whole." *Id.*

Contrary to the ALJ's decision, I find that the residual functional assessment prepared by the State Agency Disability Examiner is not consistent with the record as a whole. As explained above, Dr. Brassard determined that the plaintiff should not lift more than five pounds and was only capable of working for four hours a day. Further, the VA determined that Plaintiff had a disability rating of 100%. Contrary to the ALJ's decision, the State Agency Disability Examiner's determination that Plaintiff was capable of lifting up to fifty pounds and of working about six hours in an eight hour workday is not consistent with the record as a whole. Consequently, the ALJ erred in relying on the State Agency's decision on this basis.

      b.    <u>The ALJ Did Not Adequately Develop the Record</u>

The ALJ concluded that the Plaintiff had the RFC to "perform unskilled, medium exertional work with no climbing of ladders, ropes or scaffolds; while avoiding concentrated exposure to extreme temperatures of cold and heat; and while avoiding all exposure to environmental hazards such as machinery and heights. Medium work involves lifting of no more than 50 pounds at a time, frequently lifting and carrying objects weighing up to 25 pounds, and may involve a good deal of standing and walking." Tr. at 22.

However, the ALJ fails to identify how the evidence supports this conclusion. Plaintiff has both physical and mental impairments. The ALJ explains the evidence in

the record regarding Plaintiff's mental disabilities, but does not state any mental impairments in the RFC or explain why he did not include them.  Further, the ALJ does not identify any evidence in the record which supports the ALJ's overall RFC, nor does the ALJ take into account Plaintiff's physical impairments resulting from her diagnosis of CFS.  As explained above, the ALJ rejects (on an improper basis) the findings of Dr. Brassard regarding the severity of Plaintiff's CFS.  This rejection itself was error, but the ALJ further erred by not identifying any medical evidence regarding the severity of Plaintiff's CFS which would rebut Dr. Brassard's findings.

Although the ALJ criticized Dr. Brassard, he failed to rebut his findings through evidence in the record that Plaintiff's combined disabilities limited her to very sedentary work.  At the very least, if the ALJ was not to obtain his own experts on the issue of the limitations of Plaintiff's CFS, he should have contacted the treating physician to determine his opinion about the impact of the combination of impairments on Plaintiff's ability to work.  See *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).  The ALJ had a duty to fully develop the record on this issue.  *See Baca*, 5 F.3d at 479-80.  His failure to develop the record on this issue violated his duties under the Social Security Act.

### 3. The ALJ Erred in Assessing Plaintiff's Credibility

Plaintiff also argues that the ALJ erred in assessing Plaintiff's credibility.  The ALJ found that "the [Plaintiff] was not a persuasive witness."  Tr. at 21.  As support for this finding, the ALJ cited to inconsistencies in the Plaintiffs reporting of her symptoms, as well as medical evidence that the Plaintiff engaged in "symptom exaggeration."  The

ALJ, however, did not identify that he gave any weight to Plaintiff's work history prior to the onset date. "Where a claimant has a good work history, she is entitled to substantial credibility when she then asserts that she is unable to work." *Tyson v. Apfel*, 107 F.Supp.2d 1267, 1270-71 (D. Colo. 2000). I find that it was error for the ALJ not to at least consider Plaintiff's work history in his analysis of Plaintiff's credibility.

        4.    <u>The Hypothetical Questions May Not Have Included All of Plaintiff's Impairments</u>

Since the ALJ failed to properly assess the combined impacts of Plaintiff's mental and physical impairments on Plaintiff's ability to work, the hypothetical question may not have included all of the impairments. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("'testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the . . . decision'") (quotation omitted). Further, the hypothetical questions did not address Plaintiff's carpal tunnel syndrome or Plaintiff's symptoms from her CFS. Accordingly, the ALJ's finding that Plaintiff was not disabled at step four based on the testimony of vocational experts is not based on substantial evidence. This also requires reversal.

IV.    <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g).

Dated: March 14, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge